UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
PRASANNA W. GOONEWARDENA,

        Plaintiff,      05 Civ. 8554 (PKC) (FM)

    -against-        MEMORANDUM
                AND
STATE OF NEW YORK, et. al.,     ORDER

        Defendants.
----------------------------------------------------------------x

P. KEVIN CASTEL, U.S.D.J.

    Plaintiff Prasanna Goonewardena, proceeding pro se, brings this action pursuant to Title II and III of the Americans with Disabilities Act, 42 U.S.C. 12101, et seq. ("ADA"), the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq. ("Rehabilitation Act") and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq. ("Title IX") against Hunter College, The City University of New York, Jennifer Raab, President of Hunter College, Linda Chin, Esq., Special Counsel to the President of Hunter College, and Michael Escott, Associate Dean of Students at Hunter College.  Plaintiff's Amended Complaint ("AC") alleges that CUNY and various officials and employees of Hunter College discriminated against him on the basis of his disability, race, national origin, and religion and denied him due process and equal protection under the law as guaranteed the Fourteenth Amendment.

    On its face, plaintiff's Amended Complaint does not expressly invoke 42 U.S.C. § 1983.  However, plaintiff's Amended Complaint and other papers indicate that he believes that his rights to due process and equal protection under the Fourteenth Amendment have been violated.  A proper statutory vehicle by which plaintiff could bring those claims is a section 1983 claim.  Therefore, in light of plaintiff's pro se status, and the command that pro se pleadings are

to be given liberal construction, see e.g., Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001),

I will read the Amended Complaint as alleging a violation of plaintiff's rights under section

1983.  Similarly, while plaintiff's memorandum of law in opposition to this motion references

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI"), his Amended

Complaint does not on its face refer to that statute.  However, as with plaintiff's section 1983

claim, I will read the Amended Complaint as alleging a violation of Title VI.  I also note that

Linda Chin does not appear in the full caption of this suit but is named in the Amended

Complaint and was served with the summons and complaint. (Docket 14, 19)  The caption is

deemed amended to include Ms. Chin.

 Defendants move to dismiss the Amended Complaint on various grounds,

alleging that this court lacks subject matter jurisdiction over several of plaintiff's claims because

CUNY and the individual defendants are arms of the State of New York and, therefore, enjoy

sovereign immunity.  Defendants contend that those claims to which a defendant is immune

should be dismissed pursuant to Rule 12(b)(1), Fed. R. Civ. P., and that plaintiff's remaining

allegations fail to state a claim and should be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ.

P.  Plaintiff has been served with the requisite Notice to Pro Se Litigants Opposing a Motion to

Dismiss pursuant to Local Rule 12.1.  For the reasons set forth below, defendants' motion is

granted in part and denied in part.

I. BACKGROUND

 A. Goonewardena's Suspension

 Plaintiff, a self-described South Asian male who is a Buddhist, was a student at

Hunter College when the events underlying this action took place.  Hunter College is a senior

college of the City University of New York ("CUNY").[1]  In 1995, Goonewardena was elected to

Hunter's undergraduate Student Government as a Senator. (AC ¶ 61)  In October of 1995,

Goonewardena became concerned that members of the Student Government were illegally

holding their seats. (AC Exh. I-3)  In a letter from Hunter College Vice-President Silvia

Fishman, Goonewardena was directed to contact Student Government President Michelle

Gonzalez in order to pursue the matter. (Id.)  At a meeting with Fishman, Goonewardena alleges

that he accused Michael Escott, Hunter Associate Dean of Students, of "bias against me because

of my Race and National Origin." (AC ¶ 61)  Goonewardena contends that in response to his

criticism of Escott and his allegations concerning the illegality of the Student Government

elections, Escott and Gonzalez acted collusively to bring false charges against him so that they

could "continue to misuse and abuse their powers".  (Id.)

On December 7, 1995, Escott sent to Goonewardena a letter informing

Goonewardena that he had been "temporarily suspended" from Hunter College pursuant to 15.6

of Article 15 of the Bylaws of CUNY. (AC Exh. F)  Goonewardena's suspension was effective

upon his receipt of the letter.  The stated basis for plaintiff's suspension was "stalking, harassing

and physically assaulting Ms. Michelle Gonzalez" on repeated occasions in November of 1995 in

violation of Article 129A of the New York State Education Law. (Id.)  The letter scheduled a

hearing before the Faculty-Student Disciplinary Committee ("FSDC") on December 13, 1995 at

noon in a building on Hunter's 695 Park Avenue campus.  It also referred Goonewardena to a

counselor in the Office of Student Services in the event that he had questions regarding the

hearing.  It appears that the December 13 hearing was postponed at plaintiff's request, although

---

[1] It is undisputed that Hunter College, as a senior college within the CUNY system, has no separate legal existence from CUNY. See New York Education Law §§ 6202(5), 6203 (McKinney 2005); Clissuras v. City Univ. of New York, 359 F.3d 79, 81 (2d Cir, 2004).  I will treat plaintiff's claims as having been asserted against CUNY but refer to Hunter specifically in the description of the events.

the precise reason for its postponement is not clear in the record. (AC Exh. H, "Hearing Trans." at 22)

On January 19, 1996, Escott wrote to Goonewardena stating that given that there was no evidence that Goonewardena would be medically unable to attend the FSDC hearing, it would be rescheduled for January 30, 1996, at 9 a.m. (AC Exh. I)  Escott's letter also advised Goonewardena of the procedure surrounding the hearing, including his opportunity to present evidence and witnesses, as well as his opportunity to confront any witnesses or evidence presented against him.  Neither Goonewardena nor Gonzalez attended and the January 30 hearing did not go forward on the merits.  The FSDC postponed the hearing indefinitely without taking any action. (Hearing Trans. at 22-23)

B.    The Disciplinary Hearing

More than seven years later, on May 19, 2003, Goonewardena wrote to Hunter President Jennifer Raab requesting that a date be set for the FSDC hearing which had been twice scheduled but never held.  Pursuant to plaintiff's request, a hearing was scheduled for June 25, 2003 at Hunter's Park Avenue campus. (AC Exh. H)  Prior to the hearing, Goonewardena's attorney sent a letter to Escott demanding that the hearing be held at Hunter's main administrative office at 535 E.80th St. "due to plaintiff's disability (minor psychiatric illness)." (AC ¶ 22)  The request was denied.  The Park Avenue campus, which is Hunter's main campus, is handicapped-accessible, (AC Exh. B), and fifteen blocks from the plaintiff's requested location.  Goonewardena did not appear at the hearing.  The hearing proceeded in his absence and an audio recording and a transcription of the proceeding was made.

Present at the FSDC hearing were members of the committee and Escott.  Escott presented to the committee chairwoman an unopened letter from Goonewardena which had been

sent to Escott's office.  The submission stated that Goonewardena was unable to attend the

hearing for "personal reasons" and denied all allegations against him.  It further stated that

Goonewardena did not intend to return to Hunter and requested that, because it was eight years

after the initial incident and neither he nor Gonzalez were still enrolled at Hunter, all allegations

against him be dropped. (AC Exh. H, Hearing Trans. 3-4)  Escott then presented Hunter's

opening statement and evidence which, it appears from the hearing transcript submitted by

plaintiff with the Amended Complaint, consisted principally of written statements by witnesses

taken at or near the time of the underlying events. The statements detailed plaintiff's harassing

conduct directed at Gonzalez.  After questioning Escott, the FSDC retired to deliberate.

On June 26, 2003, the FSDC chairwoman sent Goonewardena a letter detailing

the committee's decision that he was "guilty as charged" of stalking, harassing and physically

assaulting Gonzalez.  (AC Exh. J at 2)  The FSDC imposed a University-wide suspension which

barred plaintiff from enrolling in any CUNY school.  The letter stated that the suspension is

effective until Goonewardena receives psychiatric treatment and submits to the school

documentation that, at a minimum, he is no longer a danger to the school or himself.  The letter

also states that Escott will be "guided by the Hunter College psychologist" regarding the

adequacy of any submitted materials. (AC Exh. J at 2)  In addition, Goonewardena was informed

that "the suspension will be noted on your transcript and will remain on your transcript until such

time as the suspension is lifted as indicated above." (Id.)  Goonewardena was also informed of

his right to appeal the FSDC determination to President Raab and, if necessary, to the Board of

Trustees of CUNY.

On August 6, 2003, Goonewardena wrote to President Raab, contending that his

time to appeal should be extended due to an error in the mailing of the FSDC decision and

requesting all documents related to the June 2003 hearing as well as an additional copy of the audiotape of the hearing as his copy was inaudible. (AC Exh. G)  While it is unclear from the record when or by whom an extension of Goonewardena's time to appeal was granted, it appears that his time was, indeed, extended.  Goonewardena's letter also asserted that "the hearing record and the decision should be quashed or set aside to be fair" as the hearing was conducted without the testimony of the alleged accuser. (Id. at 2)  Goonewardena further contended that he had not assaulted Gonzalez and transmitted a copy of sections of the New York Penal law defining assault.  Goonewardena's appeal to President Raab was denied on October 1, 2003.  He did not appeal to the Board of Trustees.

C.    The Psychiatrist Letters

On December 9, 2003, plaintiff forwarded to President Raab a letter from his psychiatrist, Dr. Ludmilla Dashevsky, which asserted that plaintiff was her patient, he suffered from a "chronic psychiatric condition", and plaintiff's condition "appears stable and [plaintiff is] not a danger to [himself] or others." (AC Exh. K).  Escott responded on March 16, 2004, stating that Goonewardena's case would be reviewed by Escott and the College Psychologist, pursuant to the FSDC decision. (AC Exh. L)

On March 31, 2004, Escott wrote to plaintiff stating that despite repeated efforts, Katherine Leak, the Hunter counselor assigned to plaintiff's case, had been unable to speak to Dr. Dashevsky. (AC Exh. M)  On April 28, 2004, plaintiff's lawyer mailed Escott a letter imposing conditions on the revelation of plaintiff's psychiatric information to Hunter officials. As a precondition to approving both the college's communication with plaintiff's psychologist and a review of plaintiff's psychological records, plaintiff's counsel demanded to know, among other things, what information was sought from the psychologist, how long the information

would be retained and how it would be protected. (AC Exh. O)  Escott responded in writing to the inquiry.  (AC Exh. Y)

On July 6, 2004, plaintiff forwarded to Escott a letter from Dr. Dashevsky which stated that plaintiff showed a "partial response and partial improvement" to treatment. (AC Exh. N)  Thereafter, Escott wrote to Dr. Dashevsky requesting more information on plaintiff's medications, treatment and functionality as "the Hunter College Administration lacks a clear sense of [plaintiff's] baseline functioning, responsiveness to treatment modality and his manifest mental health improvements." (AC Exh. P)  Although a letter exchange with plaintiff followed, no additional information on Goonewardena's psychological condition was given to Hunter and Goonewardena was not readmitted.  On April 14, 2005, Linda Chin, legal counsel to President Raab wrote to Goonewardena, once again informing him that he could not be readmitted to Hunter or any CUNY college until he complied with the conditions imposed by the FSDC. (AC Exh. B at 1)

D.    Article 78 Proceeding

In July 2005, plaintiff commenced an Article 78 proceeding in Supreme Court, New York County, against the State of New York and CUNY.  On January 3, 2006, Justice William A. Wetzel denied plaintiff's motion as untimely.  Justice Wetzel further noted that all claims for monetary damages were dismissed as an improper remedy under Court of Claims Act § 9 and New York Education Law § 2264.  On October 5, 2005, while the Article 78 proceeding was pending, plaintiff filed the Complaint in this action.  Plaintiff filed the Amended Complaint on January 26, 2006.

E.    The Amended Complaint

The plaintiff's Amended Complaint is 26 pages is length.  It purports to assert two claims.  Count One is denominated as "Malicious and False Allegations".  The plaintiff has disclaimed an intention to assert a claim under federal law in either Count One or Two, contending that "the Plaintiff did not state any State violations in his claim.[sic]  This is a Federal law suit [] Federal violations . . . ." (Docket 21 at 3).  The substance of Count One is that he was accused of assaulting and staking Ms. Gonzalez when, in truth, his conduct does not meet the definition of "assault" or "stalking" as used in the New York Penal Law.  The foregoing allegation states no cognizable claim under state or federal law and Count One is therefore dismissed.

Count Two is denominated a claim "For Discrimination on Disability." Generously read, it alleges more than claims of discrimination on the basis of disability and also contains, among other allegations, assertions that might be considered under section 1983 and Title VI.  I will consider the facts as alleged in Count One in assessing the broad claim asserted in Count Two.  For ease of understanding, I will assess Count Two— indeed, the entirety of the Amended Complaint— on the basis of the possible legal theories asserted.

Sprinkled throughout the Amended Complaint are allegations which include those asserting that plaintiff was discriminated against by Hunter College and the individual defendants based on his disability, race, color, national origin and religion. (AC ¶ 1)  He alleges that he was wrongly suspended from Hunter by "White Americans" because of his "[r]ace (non-white), color (brown), religion (Buddhist), national origin (South Asian and born outside of the United States) and disability". (AC ¶¶ 20, 29)  He further alleges that the suspension was the result of a hearing held "improperly without the accuser, accused and any witnesses." (AC ¶ 21)

Goonewardena alleges that letters from witnesses to plaintiff's alleged stalking of Gonzalez were not admissible at the disciplinary hearing as they were not notarized and that Escott's "actions were clearly discriminatory and a denial of due process" under the Fourteenth Amendment. (AC ¶ 27)  He further contends that, as evidenced by the letters submitted to Hunter from Dr. Dashevsky, he has demonstrated that he is not a threat to himself or others and has therefore complied with the FSDC's requirement for his readmission.  Plaintiff asserts that Hunter's refusal to readmit him or to remove the notation regarding his suspension from his transcript is wrongful and, reading plaintiff's complaint liberally, violated his equal protection and due process rights under the Fourteenth Amendment.

   The Amended Complaint invokes Titles II and III of the ADA, Section 504 of the Rehabilitation Act, Title IX of the Education Amendments and the due process and equal protection guarantees of the Fourteenth Amendment.  However, it addresses all defendants in an undifferentiated mass and does not identify the parties against whom each claim is asserted. While the allegations in plaintiff's Amended Complaint seem to indicate that suits against the individuals are in their official capacities, it is unclear whether plaintiff intends to also assert claims against those individuals in their personal capacities.  I will read the Amended Complaint liberally and, where legally tenable, construe the Amended Complaint as asserting all referenced claims against all defendants in all capacities.

II.  <u>DISCUSSION</u>

  A.  <u>Motion to Dismiss Standard</u>

   Under Rule 8(a)(2), Fed. R. Civ. P., a plaintiff's complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(a)'s pleading standard is applicable to all civil actions, with limited exceptions which are not relevant

here.  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).  The plain statement of the claim

must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which

it rests." Id. (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Further, where a plaintiff is

proceeding pro se, the court must read the pleadings liberally and view them as raising the

strongest arguments that are suggested therein. McEachin v. McGunnis, 357 F.3d 197, 200 (2d

Cir. 2004).  However, even under the lenient pleading requirement of Rule 8(a)(2), as articulated

in Swierkiewicz, "conclusory allegations are insufficient to withstand a motion to dismiss." See

Giaccio v. City of New York, 2005 WL 95733, *5, (S.D.N.Y. Jan. 19, 2005)(citing Straker v.

Metro. Transit Auth., 333 F.Supp.2d 91, 102 (E.D.N.Y. 2004)(reviewing post- Swierkiewicz

cases)).  Further, "[A] plaintiff can plead himself out of court by alleging facts which show that

he has no claim, even though he was not required to allege those facts." Jackson v. Marion

County, 66 F.3d 151, 153 (7th Cir.1995) (Posner, J.).

On a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the

allegations of the complaint as true, drawing all reasonable inferences in favor of the nonmoving

party and dismissing the complaint only where "it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief." Harris v. City of

New York, 186 F.3d 243, 250 (2d Cir. 1999) (quoting Conley, 355 U.S. at 45-46).  Therefore,

the issue before the court on such a motion "is not whether a plaintiff will ultimately prevail but

whether the claimant is entitled to offer evidence to support the claims." King v. Simpson, 189

F.3d 284, 287 (2d Cir. 1999)(citation omitted).

The Eleventh Amendment bars "federal jurisdiction over suits against

nonconsenting States", and so whether or not sovereign immunity bars a claim is properly

decided under a Rule 12(b)(1) motion. U.S. Const. Amend. XI; Kimel v. Florida Bd. of Regents,

528 U.S. 62, 73 (2000)(citation omitted).  When a defendant's motion to dismiss is premised on the claim that a court lacks subject matter jurisdiction over the allegations as stated in the complaint, the burden of demonstrating that the court has subject matter jurisdiction over the case falls on the plaintiff as it is the plaintiff who seeks to invoke the court's jurisdiction. Scelsa v. City Univ. of New York, 76 F.3d 37, 40 (2d Cir. 1996).  In deciding whether there is jurisdiction over a claim, the court accepts as true all factual allegations but "need not accept as true contested jurisdictional allegations" or draw inferences favorable to the party asserting jurisdiction. See Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).  The court may also look to evidence outside of the pleadings to determine whether there is jurisdiction. See Robinson v. Gov't of Malaysia, 269 F.3d 133, 141 n.6 (2d Cir. 2001). Because defendants have moved pursuant to both Rule 12(b)(1) and 12(b)(6), I apply each of the standards described above as applicable to each of plaintiff's claims.

B.    The ADA Claims

        Plaintiff asserts claims under Title II and III of the ADA.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (1990). Title III of the ADA governs public accommodations by private entities. 42 U.S.C. § 12182. Suits against individuals in their personal capacities are not permitted under the ADA. Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001); Sutherland v. New York State Dep't of Law, 1999 WL 314186, at *7 (S.D.N.Y. May 19, 1999), aff'd, 216 F.3d 1073 (2d Cir. 2000)(citations omitted).  Any claims for money damages against the individual defendants in their personal capacities under Title II and III of the ADA are therefore

dismissed.  For the reasons discussed below, I further conclude that claims under Title III of the ADA are improperly asserted against public defendants and are accordingly dismissed, but that plaintiff's claims under Title II of the ADA against CUNY and the individual defendants in their official capacities are not barred by the doctrine of sovereign immunity and defendants' motion to dismiss those claims is denied.

    1.  Title III of the ADA

Title III is not applicable to public entities, including any entity which is an "instrumentality of a State." 42 U.S.C. §§ 12131(1)(B), 12181(6).  Senior colleges within the CUNY system, of which Hunter is one, are considered "arms of the state".  Clissuras v. City Univ. of New York, 350 F.3d 79, 81 (2d Cir. 2004)(per curium), cert. denied, 543 U.S. 987 (2004).  Also, Hunter is an improper defendant under Title III of the ADA as it is a public entity under section 12131(1)(B).  Similarly, the individual defendants, Raab, Escott and Chin, are improper defendants as in their official capacities they do not operate, own or lease a private entity which offers public accommodation.  All of plaintiff's claims under Title III of the ADA are thus dismissed.

    2.  Title II of the ADA

Title II of the ADA is intended to prohibit discrimination by governmental entities in their operation of public services, programs and activities.  However, suits against governmental entities are limited by the Eleventh Amendment which prohibits a citizen of a State from suing a State or its agencies in federal court. U.S. Const. amend. XI.  The State's sovereign immunity also extends to damage actions against state employees acting in their official capacities because the state is the real party in interest. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-99 (1984); Farid v. Smith, 850 F.2d 917, 921 (1996).  A State

may waive its sovereign immunity.  New York, however, has not waived its immunity as to suits seeking either monetary or injunctive relief in federal court. N.Y. Court of Claims Act § 8 (McKinney 2006).  Alternatively, a State's sovereign immunity may be abrogated by Congress. See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996).

### i.   Abrogation under Section 5 of the Fourteenth Amendment

In order to abrogate a State's sovereign immunity, Congress must (1) make "its intention to abrogate unmistakably clear in the language of the statute" and (2) act "pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment." Nevada Dept. of Human Res. v. Hibbs, 538 U.S. 721, 726 (2003).  As to the first requirement, Congress has stated an intent under Title II of the ADA to abrogate States' sovereign immunity. See 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter.").  As to the second requirement, Title II was enacted pursuant, in part, to Congress's power under section 5 of the Fourteenth Amendment. See 42 U.S.C. § 12101(b)(4).  Therefore, the fundamental question is whether Title II's abrogation of sovereign immunity constitutes a valid exercise of power under section 5.

Congressional abrogation of a state's sovereign immunity is a  "valid exercise of power under § 5 of the Fourteenth Amendment" when the legislation in question "enforce[s] the substantive guarantees of that Amendment." Tennessee v. Lane, 541 U.S. 509, 518 (2004).  In seeking to enforce the substantive guarantees of the Fourteenth Amendment, Congress may enact prophylactic measures which prohibit conduct that does not actually violate the constitution.  See Hibbs, 538 U.S. at 727-28 (noting that Congress may "enact so-called prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and

deter unconstitutional conduct."); Lane, 541 at 529.  However, congressional power under Section 5 is not absolute; congressional action may not work "a substantial change in the governing law." City of Boerne v. Flores, 521 U.S. 507, 519 (1997).

In order to determine whether prophylactic legislation fails to effectuate the guarantees of the Fourteenth Amendment and thereby exceeds Congress's power under section 5, courts apply a tripartite test to determine whether there is "a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." Id. at 520. The congruence and proportionality inquiry, first set forth in City of Boerne, examines (1) the constitutional right at issue; (2) whether Congress identified a history and pattern of unconstitutional discrimination by the States against the disabled with respect to public services; and (3) whether the rights and remedies created by the statute are congruent and proportional to the constitutional rights it purports to enforce and the record of constitutional violations adduced by Congress. Garrett, 531 U.S. at 365, 368, 372-73.  In Lane, the Court applied the congruence and proportionality inquiry to determine that Title II's abrogation of sovereign immunity in the limited context of the disabled's access to judicial services was a valid use of Congress's powers under section 5.

Recently in United States v. Georgia, the Supreme Court again examined Title II and the issue of abrogation, including in the class of cases where abrogation is permissible those circumstances in which State conduct actually violates the Constitution. 546 U.S. 151, 126 S.Ct. 877 (2006)(finding abrogation permissible where conduct underlying a prisoner's Eighth Amendment claims also formed the basis for his claims under title II of the ADA).  According to the Court, "insofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state

sovereign immunity." <u>Id.</u> at 882.  The Court in <u>Georgia</u> also set forth a three-part test to determine whether a plaintiff may sue a state for money damages under Title II of the ADA.  I consider that framework here.

ii.  <u>The Georgia Analysis</u>

In order to determine whether plaintiff can sue CUNY and the individual defendants in their official capacities for monetary damages, I must determine "on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." <u>Georgia</u>, 126 S.Ct. at 882.  I must determine whether, taking as all of plaintiff's allegations as true, defendants' alleged conduct violates Title II at the outset because "prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision." <u>Gulf Oil Co. v. Bernard</u>, 452 U.S. 89, 99 (1981).  If there is no violation of Title II, then the <u>Georgia</u> analysis ends and the claim is dismissed on the ground that plaintiff has failed to state a claim rather than that the court lacks jurisdiction due to sovereign immunity.  Similarly, if I conclude under the second prong that CUNY's conduct actually violated the Fourteenth Amendment, the analysis ends as abrogation is proper under the rule established in <u>Georgia</u>. Where state conduct does not run afoul of the Fourteenth Amendment, the third prong of the <u>Georgia</u> analysis requires that I undertake the <u>City of Boerne</u> tripartite congruence and proportionality inquiry to determine whether abrogation under Title II is a pursuant to a valid exercise of Congressional power under Section 5. 521 U.S. at 520-21.[2]

---

[2] The Second Circuit has stated that in order to establish valid abrogation permitting suits for money damages against the State or individuals in their official capacities, the plaintiff must "establish that the Title II violation was

Here, I conclude that while Goonewardena has stated a violation of Title II, he has failed the second <u>Georgia</u> step of establishing the one of his rights under the fourteenth amendment has been violated.  I conclude that under the final <u>Georgia</u> step, that Title II's abrogation is valid because it is a congruent and proportional response to the risk of discrimination in public education against the disabled.  Therefore, the defendants' assertion of sovereign immunity does not bar plaintiff's claim.

1.   <u>Whether Conduct Alleged States a Violation of Title II of the ADA</u>

In order to state a claim for violation of Title II of the ADA, Goonewardena must allege that (1) he is a qualified individual with a disability; (2) he has either been excluded from participation in or otherwise denied the benefits of a public entity's services, programs or activities or was otherwise discriminated against; and (3) such exclusion, denial of benefits or discrimination was by reason of his disability. <u>See</u> 42 U.S.C. § 12132; <u>Henrietta D. v. Bloomberg</u>, 331 F.3d 261, 272 (2d Cir. 2003), <u>cert. denied</u>, 541 U.S. 936 (2004).  The term "disability" includes "[a]ny mental or psychological disorder, such as . . . emotional or mental illness." 29 C.F.R. § 1630.2(h) (2001).  Under the statute, a "'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, . . . , meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

Here, Goonewardena asserts that he is a qualified individual who was allegedly denied access to CUNY's educational services because he has a psychological disability.

---

motivated by either discriminatory animus or ill will due to disability." <u>Garcia</u>, 280 F.3d at 112.  It is far from clear whether the discriminatory animus requirement remains in place following the Supreme Court's decisions in <u>Lane</u> and <u>Georgia</u>. <u>See</u>, <u>e.g.</u>, <u>Press v. State Univ. of New York at Stony Brook</u>, 388 F.Supp.2d 127, 133 (E.D.N.Y. 2006)(discussing whether discriminatory animus requirement remains in effect post-<u>Lane</u>.).

Specifically, plaintiff alleges that CUNY discriminated against him based on his disability by wrongfully suspending him.  While Goonewardena fails to explicitly allege that CUNY failed to reasonably accommodate him, his Amended Complaint may be read to assert such an allegation in that he contends that despite what he views as compliance with the conditions for readmission, CUNY has unreasonably failed to accommodate him by readmitting him.  While CUNY may be able to demonstrate that the alleged discrimination, his suspension, was the result of neutral criteria which would have resulted in the suspension of any student that engaged in conduct such as Goonewardena's or that CUNY did adequately accommodate him but that he simply failed to comply with the conditions for his readmission, it has not done so at this stage of the litigation.  At the motion to dismiss stage, plaintiff has alleged that defendants discriminated against him based on his disability and I am unable to find that plaintiff can demonstrate no set of facts which would prove a violation of Title II.  Having concluded that Goonewardena has alleged conduct that violates Title II, I now must determine what, if any, of defendants' conduct that states a violation of Title II also violates the Fourteenth Amendment.

> 2. <u>Whether Alleged Conduct Which States a Violation of Title II Also Violates the Fourteenth Amendment</u>

Plaintiff alleges that defendants' conduct violates both the due process and equal protection guarantees of the Fourteenth Amendment.

> a. <u>Due Process</u>

The due process clause requires that, "[a]t the very minimum . . . students facing suspension and the consequent interference with a protected property interest must be given some kind of notice and afforded some kind of hearing."  <u>Gross v. Lopez</u>, 419 U.S. 565, 579 (1975).

Plaintiff, although on ample notice of it, declined to attend the FSDC hearing held on June 25, 2003.  Further, Goonewardena was given an opportunity to twice appeal the FSDC determination within CUNY, first to President Raab and then to the CUNY Board of Trustees.  While he took advantage of the appeal to Raab, he never appealed the FSDC determination to the Board of Trustees.

Moreover, he availed himself of his right to commence an Article 78 proceeding in New York Supreme Court in which he challenged the FSDC determination and his subsequent suspension.  Plaintiff alleges that members of the FSDC were appointed by Escott, and, therefore, are loyal to him and that the FSDC proceeding was consequently tainted.  But he had a full and fair opportunity to present his claim to the State Supreme Court.  Therefore, even accepting plaintiff's allegations as true, he had a state-created remedy for any due process violation as an Article 78 proceeding is "a perfectly adequate postdeprivation remedy" for perceived due process violations. See Hellenic American Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 881 (2d Cir. 1996)(collecting cases), cert. denied, 521 U.S. 1140 (1997).  Although the state court dismissed the plaintiff's petition on statute of limitations grounds, it also noted that there were additional "sustainable legal arguments compelling dismissal."  (Colucci Dec. Exh. A at 2)  While plaintiff repeatedly urges in his memorandum that the state court erred in the Article 78 proceeding, plaintiff may not challenge the state court judgment in this forum but must appeal within the state court system.  I conclude that plaintiff's Amended Complaint, generally construed, fails to state a due process violation.

b.  Equal Protection

The Fourteenth Amendment to the United States Constitution provides that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws," and is

"essentially a direction that all persons similarly situated should be treated alike." <u>City of Cleburne, Texas v. Cleburne Living Center</u>, 473 U.S. 432, 439 (1985).

Where a plaintiff is not a member of a suspect class or where the conduct alleged does not involve a fundamental right, courts require only that there be a rational relationship between the differential treatment of similarly situated individuals and a legitimate government interest. The disabled are not a suspect class for purposes of the Fourteenth Amendment. <u>Board of Trustees of Univ. of Alabama v. Garrett</u>, 531 U.S. 356, 366 (2001)(citing <u>Cleburne</u>, 473 U.S. at 446). Further, the right to public education is not a fundamental right. <u>See</u> <u>San Antonio Independent Sch. Dist. v. Rodriguez</u>, 411 U.S. 1, 35 (1973). Therefore, rational basis review is the appropriate level of scrutiny. <u>Ramos v. Town of Vernon</u>, 353 F.3d 171, 175 (2nd Cir. 2003)(citing <u>Allied Stores of Ohio, Inc. v. Bowers</u>, 358 U.S. 522, 528-29 (1959)).

Here, Goonewardena asserts that he was treated differently than other suspended students on the basis of his disability. However, plaintiff fails to allege facts which indicate that CUNY has acted irrationally or lacked a legitimate reason for his suspension and, indeed, the exhibits to the Amended Complaint negate the existence of a basis for such an allegation. The FSDC's suspension of plaintiff pending his production to CUNY of satisfactory letters from a psychiatrist stating that plaintiff is not a danger to himself or others plainly bears a rational relationship to the legitimate purposes of ensuring student health and safety as well as preserving CUNY's educational environment. I therefore conclude that plaintiff has not alleged a set of facts which, if proven, would constitute a violation of the Equal Protection Clause.

Having concluded that Goonewardena has stated a claim under Title II of the ADA but not a violation of the Fourteenth Amendment, I must now determine whether Congressional abrogation of the State's sovereign immunity is nevertheless a valid exercise of

Congressional power under section 5 of the Fourteenth Amendment in the context of access of the disabled to public education.

      3.   <u>Whether Congressional Abrogation of CUNY's Sovereign Immunity is Valid as to the Class of Conduct Alleged</u>

In order to determine whether abrogation in this case is a valid exercise of congressional power under section 5 of the Fourteenth Amendment, I must determine whether the three-part congruence and proportionality inquiry set forth in <u>City of Boerne</u> inquiry is satisfied.  In <u>Lane</u>, the Court declined to view Title II as an "undifferentiated whole", instead limiting its determination of whether Title II validly abrogates sovereign immunity to Title II's application in the context of access to judicial services. <u>Id.</u> at 530-31.  Following the narrow approach adopted in <u>Lane</u>, I determine only whether abrogation under Title II is a congruent and proportional response to the history of discrimination against the disabled in the context of access to public education.

In applying the three-part congruence and proportionality inquiry, the Eleventh, Fourth, First and Third Circuits have all concluded that Title II is a congruent and proportional response to the danger of unconstitutional discrimination in public education based on disability and that abrogation is appropriate. <u>See</u> <u>Florida Int'l Univ.</u>, 405 F.3d at 959; <u>Constantine v. Rectors and Visitors of George Mason University</u>, 422 F.3d 474, 490 (4th Cir. 2005); <u>Toledo</u>, 454 F.3d at 40; <u>Bowers</u>, 2007 WL 270098, *24-25; <u>see</u> <u>also</u> <u>Phiffer v. Columbia River Corr. Inst.</u>, 384 F.3d 791 (9th Cir. 2004) (upholding Title II's abrogation in all applications), <u>cert. denied</u>, 126 S. Ct. 1140 (2006).  I find the reasoning of those opinions persuasive and, on this motion, I conclude that abrogation under Title II is a congruent and proportional response to the history of discrimination against the disabled in access to education.

Having concluded that abrogation under Title II is a valid exercise of Congressional power under section 5, sovereign immunity is not a ground which bars Goonewardena's claim against CUNY.  Similarly, the immunity of the individual defendants sued in their official capacities parallels that of the State. See Garcia, 280 F.3d at 107.  Given that sovereign immunity does not shield CUNY, it does not shield the individual defendants in their official capacities. See Degrafinreid v. Ricks, 417 F. Supp.2d 403, 411 (S.D.N.Y. 2006); Tony v. Goord, 2006 WL 2496859, *6 (N.D.N.Y. Aug. 28, 2006).  As the State has asserted no other basis on which this claim must fail, the motion to dismiss plaintiff's claims against CUNY and the individual defendants in their official capacities under Title II of the ADA is denied.

C.      The Rehabilitation Act

Claims under section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, parallel those brought under the ADA.  As under the ADA, suits against individuals in the individual capacities are foreclosed. Garcia, 280 F.3d at 111-12.  All claims against the individual defendants in their personal capacities are therefore dismissed.  The Rehabilitation Act, however, unlike the ADA, was enacted pursuant to Congress's power under the Spending Clause of Article I and Congress may therefore impose conditions, including agreement to be subject to suit, on state entities that receive federal funds.  While acceptance of federal funds does not per se waive a State's sovereign immunity, defendants do not assert sovereign immunity as a defense. Id. at 113-15.  To state a claim under section 504 of the Rehabilitation Act, as under the ADA, a plaintiff must establish that: 1) plaintiff is a "qualified individual" with a disability; 2) defendant is subject to the Act; and 3) plaintiff was denied the opportunity to participate in or benefit from defendant's services, programs, or activities, or

were otherwise discriminated against by defendant, by reason of plaintiff's disability. See

Henrietta D., 331 F.3d at 272.

A person is not a "qualified individual" within the meaning of the Rehabilitation

Act when they pose a "direct threat" to the health and safety of others in the workplace. See 42

U.S.C. § 12113(b).  The "direct threat" exception has not been applied in this Circuit outside of

the workplace and the Second Circuit has not ruled on whether application of the exclusion in

other contexts would be proper. Hargrave v. Vermont, 240 F.3d 27, 36 (2d Cir. 2003).  While

the direct threat exception may permit an employer to discharge an employee prior to the

making of an actual threat, physical or otherwise, once an actual threat has been made the

exception is not applicable.  As the Second Circuit has stated, "[t]he poses a direct threat defense

is not applicable when an employee actually makes a threat, despite the common use of the word

'threat'." Sista v. CDC Ixis North Am Inc., 445 F.3d 161, 170-71 (2d Cir. 2006).  An employer

may terminate a disabled employee who, due to that disability, makes an actual threat against

another employee where it would terminate any employee for similar acts.  That employee's

termination does not fall under the direct threat exception but instead is a legitimate, non-

discriminatory reason for excluding the disabled individual from employment. Id. at 171.

Here, defendants do not contest that they are subject to the Rehabilitation Act or

that plaintiff has been excluded from CUNY's educational programs because of behavioral

incidents related to his psychological disability.  Rather, defendants contend that Goonewardena

is not a qualified person under the statute because he falls within the direct threat exception.

However, Goonewardena has been found by the FSDC to have made actual threats and the

"threat" that he allegedly poses to CUNY students due to his disability is not hypothetical but

concrete.  He does not, therefore, fall within the direct threat exception.  On a summary

judgment motion, CUNY may well be able to assert a non-discriminatory basis for its actions, such as demonstrating that, in order to ensure the safety of its students, it was necessary to suspend Goonewardena and that CUNY would suspend any other student, disabled or not, who engaged in conduct similar to his.

CUNY does not contest that plaintiff has stated a claim under all other elements of the statute and the motion to dismiss plaintiff's Rehabilitation Act claims against CUNY is denied.  Similarly, given that CUNY does not contest that it has waived its Eleventh Amendment immunity through acceptance of federal funds, the official capacity suits against the individual defendants Raab, Escott and Chin may also proceed as their immunity to suit tracks that of CUNY. See Shariff v. Goord, 2005 WL 1863560 (W.D.N.Y. Aug. 4, 2005)(citing Garcia, 280 F.3d at 107).  The motion to dismiss the claims against the individual defendants in their official capacities is therefore denied.

D.      The Equal Protection and Due Process Claims

In his Amended Complaint, Goonewardena alleges, without reference to statute, that his equal protection and due process rights have been violated.  He seeks damages for alleged discrimination against him based on his "Race, National Origin, Color and Religion." (AC "WHEREFORE" Cl. A)

1.    Title VI

In his memorandum, Goonewardena references Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, as the statutory source for his claim, contending that defendants have waived sovereign immunity by accepting federal funds. (Mem in Opp. at 7)  Title VI states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under

any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  CUNY

acknowledges that it receives federal funds. (Defs.' Mem. at 11)  Further, Congress has

abrogated States' sovereign immunity for "violations [of Title VI] that occur in whole or in part

after October 21, 1986" 42 U.S.C. § 2000d-7(b) (Supp. 1987), and CUNY is therefore not

immune to suit under Title VI.

As a threshold matter, I note that Title VI claims cannot be asserted against an

individual defendant because the individual is not the recipient of federal funding. Folkes v.

New York College of Osteopathic Medicine of New York, 214 F.Supp.2d 273, 292 (E.D.N.Y.

2002).  As to plaintiff's claims against CUNY, rather than asserting a claim alleging that

CUNY's policies or general practices are discriminatory, Goonewardena seeks to hold CUNY

accountable for the acts of its employees.  Liability under Title VI, which parallels that of Title

IX, cannot be imputed to institutions based on the actions of their employees. Cf. Gebser v.

Lago Vista Independent Sch. Dist., 524 U .S. 274, 287-88 (1998)(school district cannot be held

liable for harassment of student by teacher based on principles of constructive notice or

vicarious liability under Title IX.)  Further, even if I were to adopt the proposition that an

educational institution may be liable under Title VI for the actions of its employees if the

institution is "deliberately indifferent" to discrimination to such an extent that the indifference

may be viewed as racially motivated, see Rodriguez v. New York University, 2007 WL 117775,

*6 (S.D.N.Y. Jan. 16, 2007)(citations omitted), Goonewardena has failed to allege that the

school acted with the requisite discriminatory intent. See Alexander v. Sandoval, 532 U.S. 275,

280-81 (2001).  While Goonewardena alleges that Escott's actions "show that he [Escott] has a

prejudice towards the plaintiff because of his ethnicity, race, national origin . . .," plaintiff fails

to allege any acts of discrimination, other than his ultimate suspension, and fails to allege that he

reported any incidents of discrimination to CUNY officials.  This is insufficient to state a claim

against CUNY under Title VI. See Crandell v. New York College of Osteopathic Medicine, 87

F.Supp.2d 304, 320 (S.D.N.Y. 2000) (citing Gebser, 524 at 290).  I therefore conclude that any

claim under Title VI of the Civil Rights Act against CUNY is dismissed.

    2.  Section 1983

        Plaintiff's allegations under the due process and equal protection clauses may

alternatively be read as alleging claims under 42 U.S.C. § 1983.  Section 1983 proscribes

conduct under color of state law which deprives a plaintiff of a right guaranteed by the federal

Constitution or a federal law. See, e.g., Kentucky v. Graham, 472 U.S. 159, 169 (1985).

Further, the "Second Circuit has held that a section 1983 claim can be maintained against

individual defendants on the basis of Title II or Section 504 violations." K.M. ex. rel. D.G.  v.

Hyde Park Cent. Sch. Dist., 381 F.Supp.2d 343, 362 (S.D.N.Y. 2005)(citing Weixel v. Board of

Educ., 287 F.3d 138, 151 (2d Cir. 2002)).  However, sovereign immunity bars section 1983

claims, whether rooted in alleged violations of constitutional or statutory law, against New York

State or its officers in their official capacities.  As an arm of the State under New York law,

CUNY is accordingly entitled to Eleventh Amendment immunity from suit in federal court

absent waiver or Congressional abrogation. See, e.g., Clissuras, 359 F.3d at 81 n.2.  While the

acceptance of federal funds by a state entity waives that state's immunity for purposes of Title

VI, it does not for purposes of section 1983. See Edelman v. Jordan, 415 U.S. 651, 673 (1974).

Further, section 1983 does not abrogate a state's Eleventh Amendment immunity. See Quern v.

Jordan, 440 U.S. 332 (1979); Alabama v. Pugh, 438 U.S. 781, 782 (1978)(per curiam).

        In addition to preventing suits against a state, sovereign immunity also extends to

bar claims for monetary damages brought against state officers sued under section 1983 in their

official capacities. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 64 (1989).

Sovereign immunity does not, however, bar suits against officials in their personal capacities for

actions taken under color of state law. See Graham, 472 U.S. at 166-67.

        Here, Goonewardena seeks monetary relief from CUNY and the individual

defendants for violation of his Fourteenth Amendment right.  While he does not state whether

the claims against the individuals are in their personal or official capacities, I will read the

Amended Complaint to assert both types of suit.  The State of New York has not waived its

sovereign immunity in regard to section 1983 actions nor has its sovereign immunity been

abrogated.  I therefore conclude that plaintiff's section 1983 claims against CUNY asserting

violations of his due process and equal protection rights are dismissed.  In regard to the

individual defendants, plaintiff improperly relies on the Supreme Court's decision in Ex Parte

Young, 209 U.S. 123 (1908).  While the Ex Parte Young decision permitted official capacity

suits against individual defendants for prospective relief, plaintiff, here, asserts a claim for

retrospective monetary relief. See Ford v. Reynolds, 316 F.3d 351, 354-55 (2d Cir. 2003)(citing

Verizon Md. v. Pub. Serv. Comm'n of Md., 535 U.S. 635 (2002)).  Young is therefore

inapplicable to this case and plaintiff's claims against the individual defendants in their official

capacities are barred.

        Conversely, plaintiff's allegations state a claim against the individual defendants

in their personal capacities under section 1983.  Plaintiff has failed to allege that his

constitutional rights have been violated.  As I concluded in my examination of plaintiff's due

process and equal protections claims in the context of whether abrogation is proper under Title II

of the ADA, plaintiff's allegations are insufficient to establish a claim that his due process rights

or his equal protection rights have been infringed.  However, section 1983 provides redress not

just for constitutional violations but also for violation of federal statutory law.  I have concluded that plaintiff has stated a claim for violation of Title II of the ADA and section 504 of the Rehabilitation Act.  Defendants have not provided any basis other than sovereign immunity on which plaintiff's claim under section 1983 must be dismissed.  Therefore, the claims against the individual in their personal capacities may proceed and defendants' motion is therefore denied.

E.    Title IX

Plaintiff's Amended Complaint asserts a claim under Title IX, 20 U.S.C. § 1681. (AC ¶¶ 73, 74, "WHEREFORE" Clause A)  Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688, prohibits sexual discrimination by federally-funded educational institutions. 20 U.S.C. § 1681(a).  Individuals are not proper defendants under Title IX. See Manfredi v. Mount Vernon Board. of Educ., 94 F.Supp.2d 447, 455 (S.D.N.Y. 2000).

Goonewardena has not alleged that he was discriminated against on the basis of gender.  Plaintiff has therefore failed to state a claim under Title IX and any Title IX claim against CUNY is dismissed.  Similarly, individuals are improper defendants under Title IX and, even were they not, plaintiff has failed to state a claim under Title IX against any individual defendant.  All Title IX claims against individual defendants are therefore dismissed.

II.    CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the claims asserted against CUNY and the individual defendants in their official capacities under Title II of the ADA is denied.  CUNY's motion to dismiss the claims against it under section 504 of the Rehabilitation Act is denied.  Defendants Raab, Esott and Chin's motion to dismiss the claim

against them under section 504 of the Rehabilitation Act in their official capacities is denied; the

motion to dismiss the claims against them under the Rehabilitation Act in their personal

capacities is granted. Defendants Raab, Escott, Chin and CUNY's motion to dismiss all claims

against them under Title VI is granted. CUNY's motion to dismiss all claims against it under

section 1983 is granted. All claims under section 1983 against the individual defendants Raab,

Escott and Chin, in their official capacities are also dismissed. The motion to dismiss all claims

under section 1983 against the individual defendants Raab, Escott and Chin in their personal

capacities is denied. The motion to dismiss all claims against all defendants under Title III of the

ADA and Title IX of the Education Amendments is also granted.

        The court has endeavored to be faithful to the generous construction required of

pro se submissions. I reserve the right, in the context of a summary judgment motion, to revisit

my ruling that portions of the claims asserted under Title II, section 504 and section 1983

survive.

        SO ORDERED.

Dated: New York, New York
      February 14, 2007

P. Kevin Castel
United States District Judge